**STATE**

v.

**Alberto WRIGHT.**

**No. 88–27–C.A.**

Supreme Court of Rhode Island.

May 10, 1989.

James E. O'Neil, Atty. Gen., Annie Goldberg, Asst. Atty. Gen., for plaintiff.

Barbara Hurst, Asst. Public Defender, for defendant.

## OPINION

FAY, Chief Justice.

This case comes before us on appeal by the defendant from a conviction of first-degree murder entered in the Superior Court after a jury trial. We deny the defendant's appeal and affirm the conviction. The facts relevant to this appeal are as follows.

The defendant, Alberto Wright (Wright), married Alfredia Chalmers (Chalmers) in 1978. Sometime later the couple separated, and Chalmers obtained an apartment in her own name. On or about May 27, 1986, the couple attempted a reconciliation, and defendant allegedly moved into Chalmers's new apartment.

On Sunday morning, June 1, 1986, defendant, with bloodstains on his hands and clothes, appeared at the apartment of Phil Matthews (Matthews), a mutual friend of defendant and Chalmers's. Wright disclosed that he had killed his wife during an argument at her apartment. He also told Matthews that Chalmers had initially attacked him with a knife and that he killed her in self-defense. After they consumed a few drinks, defendant fell asleep at Matthews's apartment. Fearful that Chalmers might be alive but incapable of obtaining assistance, Matthews left to seek help. He went to the apartment building of Jean Jones (Jones), a friend of Chalmers's, and informed her of defendant's statements. Matthews and Jones then approached Jones's landlords, two off-duty Warren police officers, and related the situation. Thereafter one of the officers called the Providence police department.

Providence police department detectives Timothy O'Brien and Steven Springer arrived at Jones's building in response to this call. Thereupon Jones, Matthews, and the detectives proceeded to Chalmers's apartment. After ringing the doorbell and receiving no response, Detective O'Brien banged on the door and called out without result to Chalmers. When his inquiries to the neighbors regarding Chalmers's whereabouts also failed, Detective O'Brien opened a window to her apartment. Jones then reached in through the open window and picked up keys that were on a table. Detectives O'Brien and Springer entered the apartment using the key obtained by Jones to gain access. In the rear of the small apartment they found Chalmers's lifeless body. Thereafter the officers se-

cured the scene and requested backup patrol officers. They also contacted the Bureau of Criminal Identification (BCI) unit of their department and requested the medical examiner be summoned. Detectives O'Brien and Springer remained on the scene until Sergeant Daniel Guertin arrived with members of the uniformed division.

Detective Paul Crevier of the BCI arrived on the scene and photographed the relevant areas of the apartment. As he walked through the apartment, Detective Crevier observed a bloody pillowcase and a blackjack on the bed. He also observed a bloody knife on the living room couch, in close proximity to Chalmers's body. Crevier seized these items and removed them from the scene for further examination.

Meanwhile Dr. Frank Peretti, emergency medical examiner for the state, was examining the body. As Dr. Peretti prepared to leave the apartment to obtain additional tools, a knock sounded on the door. When the door was opened, Wright was standing there. Sergeant Guertin, who was standing closely behind Peretti, testified at the hearing on the motion to suppress the evidence and at the trial that at this point defendant stated, "I am the one" and "I killed my honey because I didn't like what she told me." The defendant was immediately detained and transported to the police station. The body was taken to the coroner's office, and the cause of death was later determined to be one of fifteen stab wounds suffered by Chalmers.

The defendant raises a number of issues in support of his appeal. We shall address them in the order in which they were presented in his brief. In reviewing the issues, further facts necessary for our consideration will be presented.

The threshold issue is whether the trial justice correctly determined that defendant lacked standing to challenge the introduction of the bloody pillowcase, the knife, and the blackjack. The defendant did not testify at the hearing on the motion to suppress these items, and no evidence was offered in support of his motion. Although counsel for the state mentioned during trial that defendant had moved into Chalmers's apartment, defendant did not produce any evidence to support the proposition at the suppression hearing. The trial justice found that defendant had not exhibited a legitimate expectation of privacy sufficient to prevent the introduction of the proffered evidence.

■■■ The proponent of a motion to suppress has the burden of establishing that the challenged seizure violated his own Fourth Amendment rights. *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633, 641 (1980); *United States v. Payner*, 447 U.S. 727, 731, 100 S.Ct. 2439, 2444, 65 L.Ed.2d 468, 474 (1980); *State v. Porter*, 437 A.2d 1368, 1371 (R.I. 1981). It is not enough for a defendant seeking to suppress evidence to show that a Fourth Amendment violation has occurred, rather some personal infringement must be established. *Payner*, 447 U.S. at 731, 100 S.Ct. at 2444, 65 L.Ed.2d at 474; *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 966–67, 22 L.Ed.2d 176, 187 (1969) ("Fourth Amendment rights are personal rights which * * * may not be vicariously asserted"); *United States v. McHugh*, 769 F.2d 860, 864 (1st Cir.1985); *Porter*, 437 A.2d at 1371. To determine whether a defendant should be allowed to assert infringement of his Fourth Amendment rights, we examine whether the individual had a legitimate expectation that those rights would be safeguarded. *See Payner*, 447 U.S. at 731, 100 S.Ct. at 2444, 65 L.Ed.2d at 474; *United States v. Aguirre*, 839 F.2d 854, 856 (1st Cir.1988); *McHugh*, 769 F.2d at 864; *United States v. Lochan*, 674 F.2d 960, 964 (1st Cir.1982).

■■■ The Supreme Court has delineated a two-step process to determine whether a legitimate expectation of privacy sufficient to invoke Fourth Amendment protection exists. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220, 226–27 (1979). First a court must determine "whether the individual, by his conduct, has 'exhibited an actual (subjective) expectation of privacy.'" *Id.* This determination can be made by examining what actions taken by a defendant manifest his belief that he has some expectation

of privacy. *See McHugh,* 769 F.2d at 864; *United States v. Thornley,* 707 F.2d 622, 624 (1st Cir.1983). If a subjective expectation of privacy is established, a court then considers whether, viewed objectively, the individual's expectation is reasonable. *Smith,* 442 U.S. at 740, 99 S.Ct. at 2580, 61 L.Ed.2d at 226–27. The relevant factors to finding a subjective expectation objectively reasonable include possession or ownership of the area searched or property seized, prior use of the area searched or property seized, the ability to control or exclude others' use of the property, and legitimate presence in the area searched. *See, e.g., Aguirre,* 839 F.2d at 856–57; *United States v. Gomez,* 770 F.2d 251, 254 (1st. Cir.1985); *Lochan,* 674 F.2d at 965. This two-stage examination provides the framework for applying the legitimate-expectation-of-privacy standard to questions of Fourth Amendment protection.

■ In the instant case, defendant did not produce any evidence to justify a legitimate expectation of privacy in Chalmers's apartment. First we note that defendant's actions at the apartment on the day of his arrest were his only manifestation of the presence or absence of a subjective expectation of privacy. The defendant on this day approached Chalmers's apartment door and cautiously knocked rather than enter with a key that Matthews testified defendant possessed. These actions negated any subjective manifestation of privacy in the premises.

A fortiori defendant has not met his burden of proving a reasonably objective expectation of privacy. Although some evidence was introduced both at the suppression hearing and at trial that defendant and Chalmers reconciled and that he moved in with her four days prior to the killing, such evidence does not constitute ownership or possession of the premises by defendant. The evidence disclosed that defendant did not entertain friends in the apartment, nor did defendant provide proof that anyone ever entered the apartment at his request. The trial justice found that defendant's recent entry onto the premises resulted only from Chalmers's invitation and that he could have been denied entry without legal recourse. Some equivocal evidence of possession of a key by defendant was of doubtful persuasive force and is insufficient to cause us to overturn the trial justice's finding that defendant did not possess the attendant indicia of ownership or tenancy that would give rise to a reasonable expectation of privacy in the premises in light of all the facts operating against such a conclusion.

Turning to defendant's capacity to object to the items seized, we are of the opinion that defendant possessed no reasonable expectation of privacy in the knife, the pillowcase, and the blackjack. As with Chalmers's apartment, defendant presented no evidence of a legitimate expectation of privacy in the items seized. In addition, their existence in the place where they were seized contributes to Wright's lack of expectation of privacy. The fact that the items were left in the open and not concealed in an area where defendant had no right to expect his privacy would be protected compels our determination.

■ The nonexistence of either a subjective or an objective expectation of privacy by defendant in the items seized or the place where they were seized leads us to hold that defendant has no legitimate expectation of privacy sufficient to invoke Fourth Amendment protection. As we previously stated, defendant bore the burden of proving that the seizure of the pillowcase, the knife, and the blackjack intruded upon his legitimate expectation of privacy. Although he could have testified to establish this fact without fear of repercussion, *Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247, 1259 (1968), defendant offered no justifiable explanation for his failure to present evidence at the suppression hearing. The defendant's attempt to establish standing by presenting a marriage certificate to this court on his appeal is wholly inadequate to raise the question. No principle is more well settled than the doctrine that we do not consider such issues raised for the first time on appeal as defendant's attempt to

establish standing to suppress the challenged evidence.

■ Even if defendant had established standing to invoke Fourth Amendment protection, his attempt at suppression would have failed. The defendant asserts that the seizure of the knife, the pillowcase, and the blackjack from Chalmers's apartment was the result of a full-scale warrantless search not justified by any exception to the warrant requirement of the Fourth and Fourteenth Amendments and article I, section 6, of the Rhode Island Constitution. In support of his argument, defendant cites a number of cases, including *Thompson v. Louisiana*, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984); *State v. Hockenhull*, 525 A.2d 926 (R.I.1987); State v. Jennings, 461 A.2d 361 (R.I.1983); and *State v. Alexander*, 433 A.2d 965 (R.I.1981). He maintains that these four cases, all with similar fact patterns, justify a finding that the action in the instant case was an unconstitutional search and seizure. In these cases, the police arrived at a place where they had reason to believe a crime had been committed. The officers proceeded to conduct a "victim or perpetrator" sweep of the premises, consisting of a swift check for victims or the wrongdoer, concluding that neither was present. Thereafter, law enforcement officials initiated a full-scale search of the premises. In each of the four cases, an unconstitutional search and seizure was found. We do not find the same similarity to the facts of this case that defendant perceives in the facts of the cited cases.

In order to comport with the plain-view exception to the Fourth Amendment requirement of a warrant to seize evidence, three conditions must be met. A law enforcement official may seize evidence in plain view when "(1) the officer was lawfully in the position that allowed him to see the evidence, (2) the officer discovered the evidence inadvertently, and (3) it was immediately apparent to the officer that the object was evidence of criminality." *State v. Collins*, 543 A.2d 641, 652 (R.I.1988) (quoting *State v. Eiseman*, 461 A.2d 369,

379 (R.I.1983)). The three prongs have been met in this case.

In order to satisfy the first prong of the plain-view exception, Detective Crevier must have been lawfully in Chalmers's apartment. For the initial entry of Detectives O'Brien and Springer and subsequently that of Detective Crevier to be constitutional, there must be an exception to the warrant requirement of the Fourth Amendment. The justification for Detectives O'Brien and Springer to enter was the credible statement of Matthews. Relying on the exigency of the situation, they proceeded into Chalmers's apartment. After discovering Chalmers's body, they followed their statutory duty and initiated notification of the state medical examiner. *See* G.L.1956 (1985 Reenactment) § 23–4–7. Thereupon the state medical examiner's presence was statutorily required by § 23–4–8. While the medical examiner performed his duties, Detective Crevier was justifiably present to discharge his assignment in safeguarding the scene of the crime and the physical evidence against loss or removal. Therefore, the exigency of the situation continued throughout the period that the medical examiner was required to examine the physical evidence and provides the basis for Detective Crevier's lawful presence at Chalmers's apartment.

The second prong of the plain-view exception is likewise met by the nature of Detective Crevier's activity at the apartment. As he photographed the scene and analyzed the situation, he saw three objects lying out in the open in the apartment. The nature of his activity was not a search and so the sighting of objects left in the open can hardly be more than inadvertent. Third, because of the nature of the bloodiness of the killing—as evidenced by the spattering on numerous walls—it was immediately evident to Crevier that these items were all evidence of a recently perpetrated crime.

Therefore, we find that the seizure of the evidence in plain view by Detective Crevier was allowable as an exception to the Fourth Amendment requirement. The sei-

zure meets the criteria set forth in *Collins* and *Eiseman,* and the evidence was correctly admitted by the trial justice. Because of the foregoing, even if defendant had sustained his burden of proving a legitimate expectation of privacy, his arguments against the seizure are not persuasive.

■ One final consideration involves the defendant's contention that the trial justice incorrectly failed to advise the jury on the issue of imperfect self-defense. Imperfect self-defense, when proven, serves to mitigate the crime of murder to voluntary manslaughter. The theory of the defense is that when an individual uses deadly force against another with an honest but unreasonable belief that such exertion is necessary to defend himself, the element of malice, which is essential to a murder conviction, is lacking and therefore the crime designation should be reduced accordingly. This court has not previously accepted, and is not now prepared to accept, the theory of an imperfect self-defense to a charge of murder. We reject categorically the defendant's argument on this issue.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment of conviction is affirmed.