### STATE

### v.

### John CATALANO.

### No. 98–59–C.A.

Supreme Court of Rhode Island.

April 28, 2000.

Annie Goldberg, Aaron L. Weisman, for plaintiff.

Kelly Monteiro, Paula Rosin, for defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

### O P I N I O N

WEISBERGER, J.

This case comes before us on the appeal of the defendant, John Catalano (defendant), from a judgment of conviction of murder in the first degree entered in the Superior Court after a trial by jury. We affirm. The facts of the case insofar as pertinent to this appeal are as follows.

On August 12, 1995, defendant went to a McDonald's restaurant near his apartment in Johnston, Rhode Island and bought a cup of coffee. There, while outside drinking his coffee, defendant was approached

by George Vessella (Vessella) and Robert Briggs (Briggs). The defendant was already acquainted with Briggs. After being introduced to Vessella, and briefly conversing with them, defendant asked Briggs for a ride back to his apartment. Briggs said it was up to Vessella because they had his car. Vessella assented and the three departed.

After they reached the apartment, defendant invited Vessella and Briggs upstairs to smoke some marijuana. They both agreed and followed defendant into his apartment. Once inside the three sat in the living room. Vessella and Briggs sat on a couch and defendant sat in a chair. They smoked marijuana for about ten minutes. The defendant asked Briggs to switch seats on the couch with Vessella so that Vessella would be seated closer to defendant. Briggs testified that he switched seats and, at that point, defendant began acting strange and became focused on Vessella. He demanded to know why Vessella was looking around the room. Vessella said he was not looking around the room.

Briggs and Vessella attempted to leave by telling defendant that Vessella had a curfew and Briggs needed to work in the morning. The defendant told them that they were not going anywhere. He said that if they tried to leave he would stab one of them. When they tried to get off the couch defendant "flinched real fast" at them. Briggs then felt nauseous and went to the bathroom, where he vomited. When he came out of the bathroom, Briggs heard defendant screaming sounds like "agh," and saw that defendant was stabbing Vessella. Briggs tried to take the knife from defendant but was cut in the attempt. The defendant then told Briggs to get a blanket, which he used to cover Vessella's body. The defendant dropped the knife, and he and Briggs left the apartment. Briggs asked defendant why he stabbed Vessella. The defendant responded that Vessella "was a bad person." Once outside, defendant told Briggs not to call the

police for an hour and walked away. Briggs then ran to the nearest telephone and called for help.

The defendant was arrested within an hour of the attack. He agreed to speak with the police about what had happened. The defendant admitted smoking marijuana with Briggs and Vessella. He said that when Briggs left to use the bathroom, Vessella suddenly lunged at him for no reason. He stated that he then grabbed a knife and stabbed Vessella until he knew he was dead.

At trial, Dr. Elizabeth Laposata, chief medical examiner for the State of Rhode Island, testified that she discovered twenty-eight stab wounds, fourteen of which were to the right side of Vessella's head and neck. Two of the wounds went through the skull bone into the brain. Doctor Laposata testified that this was unusual because much force and a very sturdy knife is required to penetrate the skull. In addition, there were five stab wounds to the chest, one to the abdomen, four to the back, and one to the left leg. Doctor Laposata concluded that there were only minor defensive wounds, indicating that Vessella had put up very little defense to this attack.

After deliberation, the jury found defendant guilty of murder in the first degree. The second count of possession of marijuana was voluntarily dismissed. The trial justice sentenced defendant to the mandatory term of life imprisonment.

In support of his appeal defendant raises two issues. We shall consider these issues in the order that they appear in defendant's brief. Further facts will be supplied as may be necessary in order to deal with these issues.

# I

## The Requested Jury Instructions on Motive

The defendant first argues that the trial justice erred when he instructed the jurors

that they could not consider defendant's lack of motive in deciding defendant's guilt or innocence. Further, defendant argues that the trial justice also committed reversible error when he refused to clarify his instructions pertaining to motive. The trial justice instructed the jurors:

"The state does not have to prove motive. The fact that they do not prove a motive is not to be considered by you. It's not a lack of evidence. They do not have to prove motive. That's the law in the State of Rhode Island."

The defendant's attorney objected to this statement. He argued that the jurors would infer that they could not even consider motive. The trial justice replied that "[t]hey can't. Motive is not an issue. The state doesn't have to prove it." The defendant's attorney then requested that the trial justice clarify his remarks by telling the jurors that "you should not consider [motive] as an element that the state must prove but you, of course, may consider motive or the lack of one in deliberating on the facts of this case." The trial justice stated that he "disagree[d] with that theory of law" and denied the request.

We have said in prior cases that "[c]onviction of crime never requires proof of motive, and the absence of motive, by itself, does not raise a reasonable doubt of guilt." *State v. Houde*, 596 A.2d 330, 334 (R.I.1991) (quoting *State v. Caruolo*, 524 A.2d 575, 584 (R.I.1987)). In *Houde*, the defendant argued that the trial justice erred by refusing to give an instruction on the absence of motive for him to have committed the crime. There, the proffered instruction stated that "[i]f you find that there is no evidence [of] motive to commit the crime charged, then you may consider the absence of a motive to be a factor in determining whether the state has met its burden in proving its case against the accused." *Houde*, 596 A.2d at 334. We upheld the trial justice's refusal to give this instruction, noting that the trial justice's instruction that the state was not required to prove motive as an element

of the crime was an accurate statement of the law in this jurisdiction. *See id.*

In *Caruolo*, 524 A.2d at 584, the defendant argued that the trial justice erred by declining to instruct the jury that the absence of proof of motive is a strong circumstance favoring acquittal. We upheld the trial justice's decision. We noted that jury instructions, that assign a particular weight to the presence or absence of motive, ought to be avoided because a trial justice may comment upon the evidence only in an impartial manner, and the weight of evidence relating to motive will vary depending on each case's circumstances. *See id.* at 584–85. Nevertheless, a trial justice may tell the jury that motive is not essential to proving guilt. *See id.* at 585.

In both *Caruolo* and *Houde* we cited with approval *State v. Bahre*, 456 A.2d 860 (Me.1983). There, the Supreme Judicial Court of Maine noted that the state is not required to prove a motive for a crime in order to obtain a conviction. Therefore, reasonable doubt about a defendant's guilt does not arise when the evidence does not establish motive. A defendant will not be entitled to acquittal when his motive in committing the offense remains undiscovered. *See id.* at 868. The proper place for motive to be discussed is during counsels' arguments before the jury, not during the trial justice's charge. *See id.*; *see also Houde*, 596 A.2d at 334 (following the suggestion in *Bahre* that motive is a proper matter for counsel's argument).

■ In the instant case, the trial justice did not err in instructing the jurors that absence of evidence of motive would not create reasonable doubt. In *Williams v. State*, 840 S.W.2d 449 (Tex.Ct.App.1991), the Court of Appeals of Texas observed that "[c]rimes the most horrible are often committed without apparent motive save an insatiate deviltry which mocks at social restraint and recklessly defies the laws of God and man." *Id.* at 460 (quoting *Preston v. State*, 8 Tex.Crim. 30, 38 (1880)).

The facts of the case at bar fit this enunciation of principle. As noted in *Houde*, the fact that we suggested in *Caruolo* that a jury may be instructed that the presence or absence of evidence of motive may be considered in conjunction with other evidence, is "not the equivalent of holding that such an instruction must be given." *Houde*, 596 A.2d at 334. The trial justice in the instant case was under no duty to give defendant's proffered instruction, and his refusal to do so does not constitute error.

## II

### The Voluntary Manslaughter Instruction

The defendant next argues that the trial justice erred when he refused to instruct the jury on the lesser-included charge of voluntary manslaughter based on the doctrine of imperfect self-defense. The defendant asserts that since he sincerely believed that he was in danger of severe bodily injury, he lacked the requisite malice for either first- or second-degree murder. The state first argues that this issue is waived since it was not preserved for appellate review, and, second, argues that if it is preserved then the requested instruction is precluded based on our opinion in *State v. Wright*, 558 A.2d 946 (R.I.1989).

■ Pursuant to Rule 30 of the Superior Court Rules of Criminal Procedure, "[n]o party may assign as error any portion of the charge or omission therefrom unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the party's objection." We have repeatedly instructed counsel to direct the trial justice's attention to the omission from a charge to which he objects and state the grounds for the objection. *See State v. Brown*, 744 A.2d 831, 837 (R.I.2000) (*Brown I*); *State v. Brown*, 549 A.2d 1373, 1376 (R.I.1988); *State v. Cianci*, 430 A.2d 756, 765 (R.I. 1981).

In *Brown I*, 744 A.2d at 838, the trial justice denied the defendant's requested jury instruction concerning second-degree murder. The trial justice then asked the defendant's attorney if he had any exception to the charge as he gave it. The defendant's attorney never directed the court's attention to the omission. *Id.* We concluded that "because counsel failed to elucidate the reasons for a second-degree murder instruction, defendant may not now argue those reasons on appeal." *Id.*

In the instant case, defendant's request No. 6 dealt with voluntary manslaughter because of imperfect self-defense. The trial justice did not give the instruction when he charged the jury. After the jury charge, the trial justice spoke with both attorneys. The defendant's attorney made arguments and preserved objections in respect to request Nos. 2, 3, 5, 7, 8, 9, and 10. The defendant's attorney did not mention request No. 6 nor did he mention the doctrine of imperfect self-defense. As in *Brown I*, the defendant's attorney here did not direct the trial justice's attention to the omission and, therefore, defendant is not now able to make this argument on appeal.

■ However, as in *Brown I*, we conclude that even if the defendant had preserved this issue for appeal, the argument is without merit. The doctrine of imperfect self-defense, when recognized, purports to reduce the crime of murder to voluntary manslaughter. *See Wright*, 558 A.2d at 951. The theory underlying the doctrine is that when a defendant uses deadly force with an honest but unreasonable belief that it is necessary to defend himself, the element of malice, necessary for a murder conviction, is lacking. *See id.* In *Wright*, we categorically rejected the defendant's contention because we noted that this Court had not previously accepted the doctrine of imperfect self-defense, nor were we then prepared to accept it. *Id.* The defendant, in the instant case, urges us to reevaluate that decision and accept the doctrine of imperfect self-defense. This we decline to do. Therefore,

the defendant's argument is without merit and the trial justice was correct not to instruct the jury on the doctrine of imperfect self-defense.

For the reasons stated, the defendant's appeal is denied and the judgment of conviction is affirmed. The papers in the case may be remanded to the Superior Court.