STATE

v.

Michelle GARCIA.

No. 2002–678–C.A.

Supreme Court of Rhode Island.

Oct. 21, 2005.

Diane Benevides, Orange, CT, for Plaintiff.

Paula Lynch, East Greenwich, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

The defendant, Michelle Garcia (Garcia or defendant), came before the Supreme Court on September 27, 2005, on appeal from a Superior Court judgment of conviction entered after a jury trial in which the jury found the defendant guilty of murder in the first degree. The defendant requests that this Court vacate the judgment and order a new trial based upon allegedly erroneous evidentiary rulings and improper jury instructions. Specifically, the defendant asserts that the trial justice: (1) abused his discretion by excluding evidence of the decedent's prior criminal acts to corroborate the defendant's self-defense claim; (2) improperly denied her request to instruct the jury on the lesser-included offense of manslaughter; and, (3) improperly admitted expert opinion evidence. For the reasons set forth herein, we affirm the judgment of the Superior Court.

### Facts and Travel

It is undisputed that on February 1, 1999, Michelle Garcia shot Monique Smith (Smith or decedent) five times in the back and shoulder. Smith was found dead at the scene. Several persons testified that although they did not witness the actual shooting, they observed the events occurring before and after this brutal murder and heard the fatal gunshots.

The facts disclose that on the day of the murder, defendant was driving her friends around Providence and encountered Smith, an acquaintance. The women affectionately greeted each other and Smith indicated that she wished to join the group. Garcia and her friends followed Smith to Prairie Avenue, where she dropped off her vehicle and accompanied the rest of the group to Migdalia Ortiz's (Ortiz) apartment. The testimony revealed that Garcia asked Ortiz to borrow money to buy food.

When Garcia and Smith returned to Ortiz's apartment with the food, Garcia made a call and Smith committed a fatal mistake—she produced a wad of cash, three to four inches thick. When Garcia finished using the telephone, she and Smith left the apartment through the back door. According to the witnesses, defendant was walking behind Smith as they departed. Moments later, five gunshots were heard and a mortally wounded Smith no longer possessed the wad of cash.

Garcia returned to the apartment and declared, "She got me. She got me in the knee. She tried to rob me." Although defendant appeared to be limping, none of the witnesses observed any injury to Garcia or her clothing. The defendant told Ortiz not to call the police because she was going to take Smith to the hospital. However, her request for assistance in moving Smith was unavailing. Garcia then fled the scene and Ortiz called 911. The defendant was observed sprinting toward her vehicle, without Smith and with no apparent injuries.

Garcia went to visit her friend, Maria Knowles (Knowles); she was neither limping nor gave any indication that she was

injured. In fact, Knowles testified that they engaged in what she described as a "playfight" in the living room. According to Knowles, Garcia had $200 to $300 and boasted that one of the $100 bills had a bullet hole in it.

Officer Robert Thomas Lepre (Officer Lepre) of the Providence Police Department was the first officer to respond to the scene. Officer Lepre testified that he walked through the open door, looked downstairs and discovered a woman's body, later identified as Smith, lying on the basement floor. The Medical Examiner's autopsy revealed that Smith suffered five gunshot wounds to the back and shoulder.

A warrant was issued for Garcia's arrest. She was arrested on February 16, 1999, by Det. Sandy Ledbetter (Det. Ledbetter) of the Richmond, Va. Police Fugitive Task Force. At the time of her arrest, Garcia had a gun in her possession that subsequently was tested and determined to be the weapon used to kill Smith.

A grand jury returned an indictment charging Garcia with Smith's murder. The defendant was convicted of murder in the first degree and, after her motion for a new trial was denied, defendant was sentenced to a mandatory term of life imprisonment at the Adult Correctional Institutions. That sentence was ordered to be served consecutively to the aggregate sentence of eighty-two years for offenses committed in the Commonwealth of Virginia. This appeal ensued.

## I

### Evidence of Decedent's Character

■ By way of motion *in limine*, defendant sought to present the testimony of

Alice Pimental (Pimental), who, according to defendant's offer of proof, was expected to testify that Garcia and Smith were friends and that Garcia frequently provided financial assistance to the decedent. Pimental also was expected to testify that she knew the decedent had planned and committed robberies; however, defendant offered no evidence that she had personal knowledge of Smith's alleged criminal behavior. The defendant asserted that this evidence was relevant to the case "because it goes towards the issue of self-defense about who was the aggressor in this case." Relying on this Court's holding in *State v. Nazario*, 694 A.2d 666 (R.I.1997) and *State v. Dellay*, 687 A.2d 435 (R.I.1996), the trial justice excluded this testimony. He found that the evidence was based on "the generalistic idea that somehow Monique Smith was intent on robbing people," rather than reputation or opinion evidence allowed by the Rules of Evidence on the issue of self-defense.

■ When reviewing a trial justice's ruling on the admissibility of evidence of prior bad acts or the character of a person, this Court employs an abuse of discretion standard. *State v. Rocha*, 834 A.2d 1263, 1266 (R.I.2003). We rarely disturb these rulings and do so only "upon a clear showing of prejudicial abuse of discretion." *State v. Oliviera*, 534 A.2d 867, 869 (R.I. 1987) (quoting *United States v. Trollinger*, 415 F.2d 527, 529 (5th Cir.1969)).

■ The defendant erroneously argued that Pimental's testimony was admissible as evidence of specific acts to show that Smith was the aggressor. Under Rule 404(b) of the Rhode Island Rules of Evidence,[1] evidence of specific acts of vio-

1. Rule 404(b) of the Rhode Island Rules of Evidence states:

"(b) *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a

lence by the victim of a crime is admissible if the defendant has raised the issue of self-defense. This evidence is allowable, however, as proof that the defendant was in fear of imminent bodily harm and that this fear was reasonable. *Nazario,* 694 A.2d at 668 (citing *Dellay,* 687 A.2d at 439). Under no set of circumstances will evidence of specific acts of conduct be admissible to prove that a victim acted in conformity on a particular occasion or to establish that the victim was the aggressor. *Id.* (citing *State v. Tribble,* 428 A.2d 1079, 1085 (R.I.1981)). Evidence of previous specific acts of the victim is admissible only if the defendant was aware of the conduct at the time of the confrontation. *Dellay,* 687 A.2d at 439. Here, defendant failed to meet this strict condition precedent for admissibility and produced no evidence that she knew of the alleged robberies at the time she shot Smith.

The defendant argues that, based on Pimental's testimony, the jury could infer that she had knowledge of Smith's criminal conduct because of the nature of their relationship. She asserts that an inference reasonably could be drawn that because Smith confided in Pimental, she also disclosed to defendant that she had planned and committed robberies. The defendant also alleged that Smith had been arrested and "she was bailed out of jail at one point in time." But there is no evidence that defendant was aware of the arrest or that she posted the bond.

■ The law is well settled; for this evidence to be admissible on the issue of self-defense, a defendant must have actual knowledge of the victim's reputation for violence or previous violent behavior. *Del-*

*lay,* 687 A.2d at 439. An inference of knowledge, purportedly based on the nature of the relationship between a defendant and a victim would defeat the purpose of the rule. Evidence of the decedent's reputation as a violent person is admissible to establish that defendant knew of the decedent's violent tendencies and, as a result of that knowledge, had a reasonable fear of the victim that caused her to act in self-defense. It is not admissible to show that she may have known, or probably knew or more likely than not knew about the victim's violent behavior. *Id.* To permit a fact-finder to draw an inference of actual knowledge of the decedent's violent behavior based on circumstantial evidence, would open the door to an unfettered examination of the decedent's character that is simply not allowed.

In addition to requiring actual knowledge by the accused of the victim's prior violent conduct, evidence is never admitted to show that the decedent acted in conformity with that aggressive behavior or to prove that the victim was the aggressor. *Dellay,* 687 A.2d at 439 (citing *Tribble,* 428 A.2d at 1085). We note that this was the precise reason given by defendant in arguing for its admission. Therefore, we are satisfied that the trial justice properly excluded this testimony. Pursuant to Rule 404(b), actual knowledge of the victim's previous violent conduct is an essential condition precedent to prove that defendant "feared imminent bodily harm and that the fear was reasonable."

## II

### Jury Instructions

■ The defendant next argues that the trial justice erred by refusing her request

---

person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, ab-

sence of mistake or accident, *or to prove that the defendant feared imminent bodily harm and that the fear was reasonable."* (Emphasis added).

to instruct the jury on the lesser-included offense of manslaughter. She contends that there was evidence of provocation sufficient to establish that she shot Smith in self-defense and that this provocation could be found by the jury to have mitigated the crime of murder to the lesser-included offense of manslaughter. Although the trial justice submitted the issue of self-defense to the jury, he declined to instruct the jury on manslaughter, declaring that Rhode Island does not recognize imperfect self-defense. The defendant argues that she did not seek a manslaughter instruction to establish a claim of imperfect self-defense, but rather to establish that the element of malice was negated by the heat of passion in accordance with *State v. Fetzik*, 577 A.2d 990, 995 (R.I. 1990). The defendant further argues that the trial justice erred by passing on the credibility of the evidence because this evidence was a question of fact for the jury to evaluate.

 It is incumbent upon a trial justice to instruct the jury on the law that applies to each issue that the parties raise at trial. *State v. McGuy*, 841 A.2d 1109, 1112 (R.I.2003) (citing G.L.1956 § 8-2-38). A defendant is entitled to a jury instruction on a lesser-included offense only when the evidence justifies such an instruction and only when the evidence could support a conviction by a rational jury. *State v. Vorgvongsa*, 692 A.2d 1194, 1197 (R.I. 1997).

 In determining whether the refusal to instruct on a lesser-included offense was proper, this Court examines the record to determine whether adequate evidence was introduced to merit a jury instruction on the lesser-included offense. *State v. Brown*, 549 A.2d 1373, 1378 (R.I. 1988). Although our review is *de novo*, the scope of the review is restricted to ascertaining whether "an actual and adequate dispute exists as to the distinguishing element between the lesser and greater offenses in question." *State v. Froais*, 653 A.2d 735, 737 (R.I.1995). When there is no such dispute, our review is at an end. *Id.*

 The crime of murder is defined by G.L.1956 § 11-23-1 as "[t]he unlawful killing of a human being with malice aforethought." First-degree murder is a willful, deliberate, premeditated killing of a human being with malice aforethought. *State v. Amazeen*, 526 A.2d 1268, 1271 (R.I.1987). In prosecutions in which there is proof of premeditation lasting more that a mere moment, the murder is murder in the first degree; all other murder is murder in the second degree. The distinguishing factor between murder and manslaughter is the presence or absence of malice aforethought. *State v. DePina*, 810 A.2d 768, 778 (R.I.2002). Malice consists of "an unjustified disregard for the possibility of death or great bodily harm and an extreme indifference to the sanctity of human life." *State v. Mattatall*, 603 A.2d 1098, 1106 (R.I.1992) (citing *State v. McGranahan*, 415 A.2d 1298, 1302 (R.I. 1980)). Voluntary manslaughter is a lesser-included offense within the crime of murder and is defined as the "unlawful killing of a human being without malice aforethought, either express or implied." *Fetzik*, 577 A.2d at 995 (citing *State v. Hockenhull*, 525 A.2d 926, 929-30 (R.I. 1987)). Malice aforethought is not an element of voluntary manslaughter because mitigating factors such as heat of passion arising from adequate provocation negate the defendant's specific intent to kill. *Hockenhull*, 525 A.2d at 930. Heat of passion can result from fear as well as anger. *Fetzik*, 577 A.2d at 995 (citing *State v. Williams*, 432 A.2d 667, 669 (R.I. 1981)). In *State v. Winston*, 105 R.I. 447, 453, 252 A.2d 354, 357 (1969), this Court

held that voluntary manslaughter exists when:

> " '(1) the provocation * * * [is] so gross as to cause the ordinary reasonable man to lose his self control and to use violence with fatal results, and (2) the defendant * * * [is] deprived of his self-control under the stress of such provocation and * * * committed the crime while so deprived.' "

██ Accordingly, a defendant charged with murder is entitled to a jury instruction on the lesser-included offense of manslaughter only if he or she can point to actual and adequate evidence demonstrating that he or she acted in the heat of passion arising from adequate provocation. *See State v. Conway,* 463 A.2d 1319, 1322 (R.I.1983). It is apparent from examining the record that there is insufficient evidence on this issue and that the trial justice properly refused to submit the issue of manslaughter to the jury.

The only evidence arguably relating to provocation was a statement that defendant made about Smith immediately after the shooting that "She got me. She got me in the knee. She tried to rob me." This bare assertion was not supported by admissible evidence—actual and adequate proof of a mitigating factor "that would negate the malice element of first-degree murder." *DePina,* 810 A.2d at 778. Standing alone, this statement fails to establish that defendant acted in the heat of passion on sudden provocation and it does not reflect an actual and adequate factual dispute upon which a rational jury could return a verdict of manslaughter. Nor does defendant point to any other evidence of mitigating factors.

The evidence at the scene of the shooting is of no assistance to Garcia and does not support defendant's assertion that Smith was the aggressor. After the women left the apartment, five gunshots were heard by the witnesses, and Smith was found with five gunshot wounds in her back and shoulder. Garcia was arrested in Richmond, Va., in possession of the murder weapon, and no other weapon was found at the scene. All of the witnesses who saw defendant after the shooting testified that defendant did not exhibit any signs of injuries, nor was there any evidence that Smith acted in such a way as " 'to cause the ordinary reasonable man to lose his self control and to use violence with fatal results.' " *Winston,* 105 R.I. at 453, 252 A.2d at 357.

The defendant relies on our holding in *State v. Ventre,* 811 A.2d 1178 (R.I.2002), in which defendant was convicted of second-degree murder, and challenged the trial justice's failure to instruct the jury on voluntary manslaughter. Ventre testified at trial and admitted shooting and killing the decedent. *Id.* at 1180–81. Ventre further testified that he was attacked by several assailants and that he feared for his life when he fired the fatal gunshots, killing the decedent and wounding another assailant. *Id.* at 1181. On appeal, we held that this testimony provided adequate and sufficient evidence to allow a jury to consider whether the element of malice aforethought was negated. *Id.* at 1184. In contrast, the only piece of evidence that Garcia points to is her self-serving statement, moments after the shooting that, "She got me. She got me in the knee. She tried to rob me." Unlike the defendant in *Ventre,* there was no evidence that defendant was in fear of her life when she riddled Smith's body with bullets. There was nothing to suggest that Garcia did not have a safe avenue of retreat or why it was even necessary for her to employ deadly force. This bare statement is insufficient to meet even the minimal standard required for an instruction on the lesser-included offense of manslaughter.

■ This state does not recognize imperfect self-defense to mitigate the crime of murder to voluntary manslaughter. *See State v. Linde,* 876 A.2d 1115, 1129 (R.I. 2005); *State v. Catalano,* 750 A.2d 426, 429 (R.I.2000); *State v. Wright,* 558 A.2d 946, 951 (R.I.1989). The theory underlying the doctrine of imperfect self-defense is that "when a defendant uses deadly force with an honest but unreasonable belief that it is necessary to defend himself, the element of malice, necessary for a murder conviction, is lacking." *Catalano,* 750 A.2d at 429. Here, defendant alleged that she was not guilty because she acted in self-defense, notwithstanding the absence of any evidence relative to the doctrine of retreat. *State v. Quarles,* 504 A.2d 473, 475–76 (R.I.1986). Although the trial justice instructed the jury on self-defense based on defendant's statement that Smith tried to rob her, the fact remains that there was no evidence of provocation by the decedent sufficient to warrant an instruction on manslaughter. The overwhelming record evidence in this case supports the jury's conclusion that, when she shot Smith five times in the back and shoulder, defendant did so with an intent to kill. Thus, we reject this argument as an improper attempt to mitigate the crime of murder to voluntary manslaughter by imperfect self-defense.

## III

### Evidence of Ballistics Testing

■ The defendant asserts that the trial justice improperly admitted results of ballistics tests (test fires) performed on the firearm seized from Garcia by the Richmond, Va. Police Department. This evidence was admitted during the testimony of Robert A. Hathaway (Hathaway), a firearm and tool marks examiner employed at the Rhode Island State Crime Lab. Hathaway testified that he conducted his own examination and testing of the murder weapon and also described a set of test cartridges done in a laboratory in Richmond, Va. According to Hathaway, the test bullets, he received from the Virginia State Crime lab matched his test bullets, and the Virginia test cartridges matched his test cartridges. Defense counsel objected to this later testimony, arguing that a proper foundation had not been established. Before this Court, defendant argues that the state failed to produce evidence establishing the chain of custody of the evidence, the manner in which the tests were done, and the accuracy of the tests.

■ The defendant's chain of custody argument is without merit. It is settled law that the "showing of continuous chain of custody is relevant only to the weight of the evidence, *not to its admissibility.*" *State v. Lynch,* 854 A.2d 1022, 1044 (R.I. 2004) (quoting *State v. Cohen,* 538 A.2d 151, 154 (R.I.1988)). Physical evidence "must be shown to be in substantially the same condition as it was when the crime was committed." *State v. Bracero,* 434 A.2d 286, 290 (R.I.1981). This burden is met when a party demonstrates, that in all reasonable probability, there was no tampering with the evidence. *Id.*

The record discloses that the gun was recovered by Det. Sandy Ledbetter of the Richmond, Va. Police Department Fugitive Task Force. Detective Ledbetter was present at trial and testified that she seized the firearm from defendant and turned it over to Richmond Police Det. Ellen Spain (Det. Spain) for firearms examination and testing. After the firearm was tested in Virginia, Det. Ledbetter personally brought the weapon to Rhode Island. Providence Police Det. Patricia Cornell (Det. Cornell) testified that she and Det. Ledbetter delivered the weapon to Hathaway who performed his own test fires. Detective Ledbetter then took back possession of the

gun. Detective Cornell testified that she received the Virginia test fires in a "FedEx priority overnight mailing" from Det. Spain and, that she was present when Hathaway examined both the gun and the Virginia test fires. There is no suggestion that the Virginia test fires were compromised in any way.

Based on the testimony elicited at trial, the state has established a chain of custody for the firearm and the Virginia test fires. There was evidence that the gun was in substantially the same condition when all tests were done and there is no evidence suggesting otherwise. Therefore, we are satisfied that the state properly established a chain of custody for the Virginia test fires.

 The defendant also argues that a proper evidentiary foundation was not established for the admissibility of the Virginia test fires and that the state failed to produce evidence about the reliability and accuracy of the tests. Hathaway, qualified as an experienced firearms examiner, testified that he examined and tested the weapon involved in this case and concluded that the firearm recovered from defendant in Virginia was the murder weapon. He also proceeded to compare test fires done in Virginia with his own test fires.

 Although there was no testimony about the reliability or accuracy of the Virginia testing procedure, the evidence of the Virginia test fires was cumulative and of minimal relevance. Evidence that is offered to prove the same point on which other admissible evidence is introduced is considered cumulative evidence. *Lynch*, 854 A.2d at 1032. When uncontradicted admissible trial evidence clearly establishes that the defendant has committed the crime, the introduction of inadmissible, cumulative evidence is harmless error beyond a reasonable doubt. *Id.*; *State v. Gomes*, 764 A.2d 125, 135 (R.I.2001).

Here, the state presented evidence of Hathaway's independent test fires of the firearm found on Garcia when she was arrested; this uncontradicted expert testimony established that the cartridges and projectiles found at the scene were fired from defendant's firearm. The defendant did not object to the introduction of this evidence. Because the evidence of the Virginia test fires was of dubious relevance to the state's case and there was uncontradicted testimony that the gun seized from defendant at the time of her arrest was the murder weapon, the admission of evidence of additional testing performed in Virginia was harmless error.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.