STATE

v.

**Sean E. MILETTE.**

No. 96–357–C.A.

Supreme Court of Rhode Island.

Nov. 17, 1997.

Annie Goldberg and Aaron L. Weisman, Providence, for Plaintiff.

Arthur E. Chatfield, III, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

This case comes before us on the defendant's appeal from a judgment of conviction following a jury trial in the Providence County Superior Court on one count of carrying a pistol without a license.

I

Facts and Travel

On the morning of August 2, 1995, Trooper James Manni (Manni) of the Rhode Island State Police was operating a stationary traffic radar post on Route 295 in Cranston. Manni observed Sean E. Milette (defendant) and a passenger traveling southbound in a black Ford Tempo owned by and registered to defendant's father. The vehicle being operated by defendant was traveling at a speed of eighty miles per hour—far in excess of the fifty-five-mile per hour posted speed limit. Manni left his radar post and began to follow the Ford Tempo.

After following the Tempo for a short distance, Manni activated his emergency vehicle lights, and at that time he observed the defendant and passenger "make numerous movements in the vehicle." Manni characterized these movements as "dipping forward," "bending down," "leaning forward in almost a jerking motion," and "leaning forward and back up, leaning forward and back up."

After stopping the Tempo but before alighting from his police vehicle, Manni observed additional similar movements and what appeared to be hasty conversation be-

tween defendant and the passenger. As Manni approached the vehicle, "the defendant immediately put his arm fully extended out the window with what appeared to be his license." Manni interpreted that gesture by defendant as an attempt to keep him from looking into the vehicle.

Manni became apprehensive and approached the passenger side of the Ford Tempo. He observed both occupants leaning forward and looking out the operator's side window. Manni then requested the defendant's license, registration, and proof of insurance. The defendant promptly provided those documents.

Manni, after receiving the requested documents, returned to his cruiser and radioed for backup State Police assistance. Approximately five to ten minutes later, two additional State Troopers, Coleman and Tikoian, arrived in separate cruisers. Manni then again approached the Ford Tempo, this time from the driver's side, and ordered both defendant and the passenger to exit the vehicle and stand near Coleman and Tikoian. Both promptly complied.

Manni then removed his Stetson, leaned so that his head was inside the compartment of the vehicle, and peered under the car's front seat. There he discovered a revolver, which he seized and rendered safe by emptying five rounds from the revolver. Manni then placed the defendant under arrest. The defendant was thereafter charged with unlawful possession of a pistol in violation of G.L.1956 § 11–47–8.

At trial defendant moved to suppress admission of the revolver, claiming that Manni's search of the Ford Tempo constituted an illegal search in violation of his rights guaranteed by article 1, section 6, of the Rhode Island Constitution and section 1 of the Fourteenth Amendment to the United States Constitution.[1] The trial justice, however, never ruled on the validity of that search because he found that defendant lacked standing as a nonowner to challenge the

search of the Ford Tempo that was owned by defendant's father. This finding was made despite defendant's testimony that he enjoyed regular use of the automobile, stored personal items in the very area searched, and had enjoyed exclusive possession and control of the automobile from the previous night until the morning of his arrest.

At the conclusion of the trial the jury returned a verdict of guilty. The defendant was subsequently sentenced to a term of seven years, all of which was suspended, and he was placed on probation for a period of seven years.

On appeal, the defendant has raised three issues. The defendant challenges the denial of his motion to suppress the revolver seized from the automobile, the sufficiency of the trial justice's instructions to the jury, and the denial of his motion for a new trial.

## II

## Motion to Suppress

■ The defendant claims that the trial justice erred in finding that because he possessed no ownership interest in either the Ford Tempo or the gun found therein, he lacked requisite standing to challenge trooper Manni's search of the car.[2] The trial justice asserted, in support of his finding, that defendant's "sporadic" use of the Tempo would not entitle him to claim any legitimate expectation of privacy in the contents of the vehicle.

■ The Fourth Amendment protects people, not places. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Because Fourth Amendment rights are personal, our first inquiry is whether defendant had a legitimate expectation of privacy in that part of the Tempo that was searched. *Rakas v. Illinois*, 439 U.S. 128, 138–48, 99 S.Ct. 421, 427–33, 58 L.Ed.2d 387, 397–404 (1978). The burden was his to prove a reasonable expectation of privacy by showing a sufficiently close connection to the

---

1. The defendant's right to be free from unlawful search and seizure pursuant to the Fourth Amendment to the United States Constitution is also implicated.

2. Both the Ford Tempo and the gun were owned by defendant's father, a correctional officer at the state correctional institution. The defendant's father was authorized by law to possess and carry the gun.

Tempo in order to have standing to claim it was searched illegally. *United States v. Sanchez,* 943 F.2d 110, 113 (1st Cir.1991); *United States v. Williams,* 714 F.2d 777, 779 n. 1 (8th Cir.1983); *State v. Wright,* 558 A.2d 946, 948 (R.I.1989). We believe that the defendant has demonstrated a legitimate expectation of privacy in the area searched by the trooper and that that expectation, viewed objectively, was justifiable and one that society is prepared to recognize as reasonable. *Rakas,* 439 U.S. at 138–48, 99 S.Ct. at 427–33, 58 L.Ed.2d at 397–404. In support of his "standing" contention, the defendant presented evidence to show that he had his father's permission to use the Tempo whenever he needed to use it. In addition he had his own set of keys to the Tempo and kept his cassette tapes in the car. There was also evidence to show that even though the Tempo was ordinarily kept at the defendant's father's house, the defendant on the day that he was stopped had permission to have the Tempo and in fact had used the Tempo "three or four times" in the nine day period before his stop and arrest by the trooper. The trial justice's reliance upon *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), and *United States v. Lochan,* 674 F.2d 960 (1st Cir.1982), was misplaced. *Salvucci* stands for setting aside the rule that mere possession of an object or being legitimately upon the premises searched established automatic standing to challenge a search of the place and seizure of an object therefrom on Fourth Amendment grounds as crafted in *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). In *Lochan* the defendant driver's claim of control over the nonowned vehicle was found to have been "diluted" by the owner's presence in the car as a passenger. The owner could have legally authorized the search even overruling any objection thereto by the driver. That same Circuit Court, some nine years later, while approving a warrantless vehicle search, said in *Sanchez,* 943 F.2d at 114,

"Had Sanchez demonstrated a more intimate relationship with the car's owner or a history of regular use of the Camero—from which a presumption of permission could be drawn—we would have been like-ly to conclude that the totality of the circumstances established a legitimate expectation of privacy."

On the facts before us, defendant has clearly demonstrated his relationship with the vehicle's owner, established the owner's permission for him to use the vehicle whenever needed, and presented a history of his regular use of the vehicle. That evidence more than satisfied his burden of establishing that the challenged search by the trooper infringed upon his personal Fourth Amendment rights and that he had a legitimate expectation that those rights would be safeguarded. *Wright,* 558 A.2d at 948. The state in its appellate brief concedes as much:

"It would seem that the defendant in this case, who not only was the driver of the car with control over its movements and the authority to exclude others from its operation, but also had his own set of keys and enjoyed the permission of the owners—his parents—to use it, must be found to have standing to contest the seizure of the weapon, since possession of the weapon was an element of the offense with which he was charged."

We agree. *See, e.g., United States v. Rubio–Rivera,* 917 F.2d 1271, 1275 (10th Cir. 1990); *United States v. Lee,* 898 F.2d 1034, 1038 (5th Cir.1990); *United States v. Miller,* 821 F.2d 546, 548–49 (11th Cir.1987); *United States v. Martinez,* 808 F.2d 1050, 1056 (5th Cir.), *cert denied,* 481 U.S. 1032, 107 S.Ct. 1962, 95 L.Ed.2d 533 (1987); *United States v. Rose,* 731 F.2d 1337, 1343 (8th Cir.), *cert denied,* 469 U.S. 931, 105 S.Ct. 326, 83 L.Ed.2d 263 (1984); *United States v. Griffin,* 729 F.2d 475, 483 (7th Cir.), *cert denied,* 469 U.S. 830, 105 S.Ct. 117, 83 L.Ed.2d 60 (1984); *United States v. Williams,* 714 F.2d 777, 779 n. 1 (8th Cir.1983); *United States v. Portillo,* 633 F.2d 1313, 1317 (9th Cir.1980), *cert denied,* 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981); *United States v. Posey,* 663 F.2d 37, 41 (7th Cir.1981), *cert denied,* 455 U.S. 959, 102 S.Ct. 1473, 71 L.Ed.2d 679 (1982).

The defendant in this appeal has also alleged that the trial justice erred in his instruction to the trial jury and in later deny-

ing the defendant's motion for a new trial. We find both of these contentions to be without merit. We do, however, because of the trial justice's error in finding that the defendant lacked standing to challenge the search of the Ford Tempo remand this case to the trial justice for hearing and his further consideration of the defendant's motion to suppress. If after that hearing the trial justice should find the search to have been illegal, he will vacate the judgment of conviction. The state in that event may seek review of the trial justice's ruling pursuant to G.L. § 12–5.1–12(d). If he finds that the search was valid, the judgment of conviction will remain and the defendant may then within the time permitted for appeals to this court seek appellate review of that finding.

For the purpose above noted, the defendant's appeal is sustained in part and denied in part. The papers in this case are remanded to the Superior Court for further proceedings in accordance with our opinion.