STATE *vs.* VINCENZO CASASANTA, *alias*, JIMMIE SANTA.

JUNE 26, 1909.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Evidence.*

Evidence tending to contradict a witness, before any foundation had been laid for that purpose, was properly ruled out as premature.

(2) *Evidence. Manslaughter.*

Upon an indictment for manslaughter, by defendant, of his wife, evidence offered by defendant tending to show the manner in which deceased was treated by her father, before her marriage with defendant, was properly excluded as immaterial.

(3) *Procedure. Interpreters.*

Where an interpreter had been appointed by the court and served during the entire trial, the action of the court in instructing the counsel for defendant not to address the jury upon the question of the good faith of the interpretation was proper, since it was not a matter for the jury to consider.

(4) *Indictments. Concealed Weapons.*

Upon an indictment for manslaughter, where it appeared that at the time of the homicide the weapon was not concealed, and the homicide was not occasioned by disobedience of the law relating to the carrying of concealed weapons, a request to charge which involved questions as to the law relative to carrying concealed weapons was properly refused.

(5) *Crimes. Gradation of Offences.*

It is not always the case that there is a gradation of offences in a felonious homicide. So where the killing was instantaneous, and the charge is merely manslaughter, the defendant is either guilty or not guilty of *that* charge, and a request to charge that the jury might find him guilty of a lesser offence was properly refused.

INDICTMENT charging manslaughter. Heard on exceptions of defendant, and overruled.

DUBOIS, C. J. The defendant, who shot and killed his wife on April 13, 1907, having been convicted of manslaughter in the Superior Court, has brought to this court his bill of exceptions, which are based upon certain alleged errors of the judge who presided at the trial, consisting of rulings, charge to the jury and refusals to charge, and denial of the defendant's motion for

a new trial upon the ground that the verdict is against the law and the evidence.

It appeared in evidence that on the day aforesaid the defendant came home to the house of Giuseppe Amoroso, his father-in-law, where he and his wife had been living, with their children, since January of the same year, having in his pocket a 38-caliber five-chambered revolver which he had purchased that morning and had loaded shortly before his arrival at the house; that he went into the kitchen, a small room, wherein were ten persons, including his father-in-law, his wife, their children, and others; that the father-in-law was tapping a pair of shoes, and was making use of a carpenter's hammer in such employment; that a few words were spoken, and the defendant fired his pistol at his father-in-law; that the latter threw the hammer at the defendant, who continued to discharge his revolver until five shots had been fired, whereof one killed the defendant's wife; that the defendant ran away, and shortly afterwards was captured.

The defendant claimed that he was struck upon the forehead with, and dazed by, the hammer before he began to shoot; that whatever he did was done in self-defence, and that he had no desire or intent to injure his wife.

Amoroso, the father-in-law, claimed that the defendant fired two or three shots at him before he threw the hammer at the defendant, and that he does not know whether it hit the defendant or not. It does not appear that any one but the defendant saw the hammer when it hit him.

The defendant claimed that, while he had good cause for enmity towards his father-in-law, he had no ill-will towards his wife, and in support of this claim offered in evidence his letter to her, written in the Italian language and mailed April 11, 1907, which has been translated, by his own interpreter, as follows:

"DEAR WIFE:—Think always for your children that you may have the reward. The day is coming when we shall talk together in eternity, in that other world. Pardon me for the many times that I have wronged you without reason. I have you always in my heart, as also my dear children, and I swear over this (a cross) that I will not love another woman in my

life. I have you always in my heart. You have been so good
toward me to not feel badly on account of my going away,
because I don't know if I shall live another week because of my
sorrow. That I have to do was on account of your parents
because they are very ignorant toward their family. But may
God pay them; now, therefore, if you like to keep my children a
day will come when you will be paid in gold. But the time will
come when your father may come under my hands. Therefore
in order to not go against I have made this resolve, therefore I
kiss you my dear, very dear, both you and my dear children. I
have written this letter crying with large tears. I kiss you, my
dear, both you and both my little children. I bless them.
Your dear husband, V. Casasanta."

Shorn of certain repetitions, the defendant's bill of excep-
tions reads as follows:

"The defendant in the above entitled indictment, being the
accused in a criminal proceeding and a party entitled to except
in said proceeding, tried by a jury in said Superior Court, comes
and files this his bill of exceptions, and says that said indictment
was tried before his honor Mr. Justice Brown, one of the justices
of the Superior Court and a jury, on the 6th, 7th, 8th, 11th,
12th, 13th and 14th days of November, A. D. 1907, and said
jury found that said defendant was guilty in manner and
form as charged in said indictment. And said defendant says
that certain exceptions have been taken by him in the proceed-
ings in said indictment as follows, as appears by the transcript of
evidence, charge and proceedings in said indictment hereby
referred to and made a part hereof:—

"1. To the admission by the trial court of conversation be-
tween two persons, not in the presence of the defendant, and
not responsive to question 256 asked by the defense in cross-
examination, as appears upon pages 47 and 48 of said tran-
script.

"2. To the sustaining by the trial court of the State's ob-
jection to question 17, as appears upon page 211 of said tran-
script.

"3. To the sustaining by the trial court of the State's ob-
jection, and to the ruling out by said trial court of question 6,

asked by the defense, as appears upon pages 229 and 230 of said transcript.

"4. To the sustaining by the trial court of the State's objection to question 7, asked by the defense, as appears upon page 312 of said transcript.

"5. To the sustaining by the trial court of the State's objection to questions 8 and 9, asked by the defense, as appears upon pages 313 and 314 of said transcript, and the defendant expressly claims the protection of section 1 of article XIV of the amendments to the constitution of the United States.

"6. To the sustaining by the trial court of the State's objection to question 1, asked by the defense, as appears upon pages 315, 316 and 317 of said transcript.

"7. To the sustaining by the trial court of the State's objection to question 30, asked by the defense, as appears on page 402 of said transcript.

"8. To the sustaining by the trial court of the State's objection to question 31, asked by the defense, as appears on page 403 of said transcript.

"9. To the sustaining by the trial court of the State's objection to question 33, asked by the defense, as appears on page 403 of said transcript.

"10. To the sustaining by the trial court of the State's objection to the complete answer of question 21, asked by the defense, as appears upon pages 455, 456 and 457 of said transcript.

"11. To the overruling by the trial court of the defendant's objection to the State's question No. 4, as appears upon page 575 of said transcript.

"12. To the instruction of the trial court in the closing argument of counsel for the defense, wherein and whereby the trial court instructed the counsel for the defense not to address the jury upon the question of the good faith of the interpretation of evidence by Michael Lubrano, used by the State as an interpreter, the good faith of Mr. Lubrano's interpretation of evidence having been questioned by the defense at the trial of said case and constituting something that had occurred during the proceedings therein.

"13. To the refusal of the trial court to charge the jury as requested in No. 1 of the defendant's requests to charge, as appears upon pages 615 and 624 of said transcript, as follows, the defendant expressly claiming and invoking the protection of section 1 of article XIV of the amendments to the constitution of the United States, providing,—'No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws:'

"'If the jury consider that the defendant on April 13, 1907, believed he had been assaulted by Giuseppe Amoroso in throwing a hammer at the defendant and hitting the defendant in the forehead, and that the defendant reasonably believed Giuseppe Amoroso was about to follow this assault up with another felonious assault or further great injury to the defendant, the defendant was justified in shooting in order to frighten away Giuseppe Amoroso, and there was no criminality involved in such shooting by the defendant, and the jury must find the defendant not guilty.'

"14. To the refusal of the trial court to charge the jury as requested in No. 3 of the defendant's requests to charge, as appears in pages 615 to 624 of said transcript, as follows. . .

"'If the jury believe that the defendant shot Angelina Casasanta by accident, misfortune or misadventure, while firing to frighten away Giuseppe Amoroso when the latter was attempting still further feloniously to assault the defendant, and while the defendant was exercising reasonable care and without any intention to do her harm, the defendant is excused from all criminal liability for such shooting and must be found by the jury not guilty.'

"15. To the refusal of the trial court to charge the jury as requested in No. 4 of the defendant's requests to charge, as appears upon pages 615 to 624 of said transcript, as follows:

. . .

"'If the jury believe that the defendant shot Angelina Casasanta while he reasonably believed his life was in dan-

ger or he was in danger of suffering great bodily harm from Giuseppe Amoroso, and while endeavoring to protect himself from a supposed further felonious assault by Giuseppe Amoroso, the defendant exercising reasonable care and without intending to do her harm, the law excuses such shooting of Angelina Casasanta and the defendant must be found by the jury to be not guilty.'

"16. To the refusal of the trial court to charge the jury as requested in No. 8, of the defendant's requests to charge, as appears upon pages 615 to 625 of said transcript, as follows:

. . .

"'As the carrying of a concealed weapon is merely a wrong prohibited by statute and not a wrong in and of itself, if the defendant shot Angelina Casasanta by misfortune or chance and not designedly, the defendant cannot be punished for the act of shooting if arising from misfortune or chance, and must be found not guilty.'

"17. To the refusal of the trial court to charge the jury as requested in No. 10 of the defendant's requests to charge, as appears on pages 615 to 624 of said transcript, as follows:

. . .

"'The defendant had a right to enter Giuseppe Amoroso's house during the forenoon of April 13, 1907, to get the defendant's wife and children and furniture, or for any other proper purpose, and Giuseppe Amoroso had no right to assault the defendant,—and further, even if the defendant had been merely and solely a trespasser at that time, Giuseppe Amoroso would not on that account have been entitled to commit a felonious and unjustifiable assault upon the defendant.'

"18. To the refusal of the trial court to charge the jury as requested in No. 14 of the defendant's requests to charge, as appears upon pages 615 to 624 of said transcript, as follows:

. . .

"'If it be uncertain, whether the defendant first assaulted Guiseppe Amoroso or any person in the latter's house with a revolver on April 13, 1907, or whether Giuseppe Amoroso first assaulted the defendant with a hammer, it is the duty of the State to prove beyond a reasonable doubt that the defendant

committed the first assault, and if the State fails to satisfy the jury beyond a reasonable doubt on this point, the defendant must be acquitted.'

"19.   To the refusal of the trial court to charge the jury as requested in No. 17 of the defendant's requests to charge, as appears on pages 615 to 624 of said transcript, as follows: . . .

"' Although Giuseppe Amoroso might have been actually unarmed on April 13, 1907, at the moment of the shooting, if the defendant was a weak man at the moment of the shooting and Giuseppe Amoroso was a strong man, and if Giuseppe Amoroso assaulted and advanced upon the defendant so as reasonably to cause the defendant to believe his life endangered or that he would suffer further great bodily harm,—either from Giuseppe Amoroso picking up the hammer already thrown at and hitting the defendant, or from any other article that the defendant might seize and use as a deadly weapon,—the defendant would be justified in using his revolver in resistance if he reasonably believed he could not safely retreat or escape from the kitchen, and that the use of the revolver was necessary to prevent great bodily injury to the defendant.'

"20.   To the refusal of the trial court to charge the jury as requested in No. 21 of the defendant's requests to charge, as appears in pages 615 to 624 of said transcript, as follows: . .

"' It is within the province of the jury, if they do not find the defendant guilty of manslaughter, either to acquit him entirely, or, if they believe him guilty of any lesser offense, to find him guilty of either an assault with a dangerous weapon, or of a simple assault; and, further, in case of conviction of any offence in this case, the jury may recommend the defendant to the mercy of the court.'

"21.   To the refusal of the trial court to charge the jury as requested in No. 22 of the defendant's requests to charge, as appears in pages 615 to 624 of said transcript, as follows: . .

"' That the defendant was already in the house as far as he came that day, and when Amoroso threw the hammer the defendant advanced no further into the house, and so did not shoot his way into the house.'

38

"22.   To the refusal of the trial court to charge the jury as requested in No. 23 of the defendant's requests to charge, as appears in pages 615 to 624 of said transcript, as follows:  .  .

" ' If the defendant came into the house for a lawful purpose, Amoroso's throwing the hammer at defendant could not convert defendant's lawful entry into an unlawful entry or properly prevent defendant being there.'

"23.   The defendant expressly claims the benefit and protection of section 1 of article XIV of the amendments of the constitution of the United States, providing,— 'No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws,' in connection with the rulings of the trial court as appears upon pages 314 and 620 of said transcript.

"24.   To the decision of the trial court, denying, on February 8th, A. D. 1908, the defendant's motion for a new trial, which motion was based upon the following grounds:—

" (a)   That the verdict rendered in said indictment is against the evidence and the weight thereof.

" (b)   That the verdict rendered by the jury in said indictment is contrary to the law as contained in the charge of the presiding justice.

"25.   To the refusal of the trial court to charge the jury as requested in No. 9 of the defendant's requests to charge, as appears in pages 615 to 624 of said transcript, as follows:  .  .

" ' As section 22 of article 1 of the constitution of Rhode Island provides that ' The right of the people to keep and bear arms shall not be infringed,' if the defendant on April 13, ·1907,— after being told the night before at Needham, Massachusetts, the advisability of having a revolver there,—bought and had in his possession a loaded revolver when he called at Giuseppe Amoroso's house at Norwood to get the defendant's wife and children and go to Massachusetts, he had a perfect right to the possession of such loaded revolver and was guilty of no offence thereby, except the statutory offence of carrying a weapon con-

cealed upon his person, if the revolver was hid from view in the defendant's pocket.'

"And the defendant insists that all of said rulings were erroneous and that said errors entitle him, either to a new trial, or to an order that judgment be entered in said Superior Court for the defendant and that said defendant be discharged from further prosecution under said indictment.

"Wherefore, the defendant tenders this his bill of exceptions and prays that the same may be allowed by this Honorable Court, in accordance with law."

The first exception is without merit. The answer objected to was stricken out by order of the court, and the question was repeated and answered without objection or exception.

The second exception relates to an immaterial question asked by the defendant in cross-examination of Giuseppe Amoroso: "Did you employ or consult counsel soon after the shooting because you were afraid of being prosecuted yourself in the matter?" How Amoroso could be prosecuted because his daughter had been killed by the defendant does not appear. If it was for the purpose of ascertaining whether Amoroso was afraid of being prosecuted for assaulting the defendant with a hammer, it had nothing to do with the case.

The third exception has no value; the court very properly sustained an objection to the question as then framed, but allowed the testimony to be introduced in answer to the second question put thereafter to the same witness by the defendant's attorney. No harm was done to the defendant by the few minutes' delay occasioned thereby.

(1) The fourth exception relates to an attempt to contradict Amoroso before any foundation had been laid for that purpose. It was premature.

The fifth exception is subject to the same criticism.

The sixth exception relates to an attempt to draw from the witness Amoroso a conversation had between him and his wife, which was properly excluded by the court.

(2) The seventh exception relates to the refusal of the court to permit a witness to state what she knew of the manner in which the deceased was treated by her father before her marriage

with the defendant. This was clearly immaterial. Whatever the answer might have been, it could shed no light upon the question at issue before the jury. The same reasoning will apply to the eighth exception.

The ninth exception, so-called, never was taken and it appears by the transcript that the counsel for defendant admitted that he did not remember that he had laid any foundation for the question.

The tenth exception relates to the action of the court in preventing the defendant from completing his answer to the following question: "Then what further conversation occurred between you" (this related to a conversation between the defendant and Giuseppe Amoroso within two weeks after the marriage of the defendant, in August, 1904, with the daughter of Amoroso)? "I told him I was very very sorry for what his brother-in-law told me the night before, that if I had known it before I had married his daughter I would'nt have married her. That is what the conservation was. Then he said I was a very foolish boy for worrying over that. A lady was made like water he says, you take a rock and throw it in the water———." The court very properly sustained the objection. The observations of Mr. Amoroso concerning the gentler sex could hardly have assisted the jury in coming to a correct conclusion as to the guilt or innocence of the accused in the case on trial before them.

The eleventh exception relates to the ruling of the court in permitting the following question to be asked, by the State's attorney, of Mary C. Amoroso: "Now, at any time shortly before this defendant Jimmie came to your father's house to live, were you present when any trouble occurred between Jimmie and his uncle Antonio Emilio?" The question was properly asked for the purpose of contradicting the defendant, who had testified that he did not leave his uncle and come to the house of Amoroso on account of trouble with his uncle.

(3)     The twelfth exception can not be sustained. The court properly instructed the counsel for the defendant not to address the jury upon the question of the good faith of Mr. Lubrano's interpretation. Mr. Lubrano was the court interpreter and

had been allowed by the court to interpret for the State during the entire proceedings. To have permitted reflections to be made upon his integrity in the performance of his sworn duty would have been equivalent to a permission to make reflections upon the judge, who was responsible not only for his appointment but also for his continuance in office. The zeal of counsel momentarily obscured his sense of propriety. It was not a matter for the jury to consider, and, furthermore, there is nothing apparent in the record to justify such a line of argument.

The defendant offered to the court twenty-three requests to charge the jury, whereof the court granted and charged twelve and refused and declined to charge eleven. The court had already sufficiently charged the jury in the matter, and many of the requests were but repetitions of matters that had already been charged, or of each other.

(4)     The first, third, fourth, tenth, fourteenth, seventeenth, and twenty-third requests were properly refused because the jury had already been sufficiently instructed in the matters therein referred to. The eighth request was rightly refused. Conceding that the act of carrying a concealed weapon is *malum prohibitum* and not *malum in se*, that act has no connection with the homicide in question. At the time of this shooting the weapon was not concealed; it was in sight and publicly discharged. The case is not one of accidental discharge of a concealed weapon in its place of concealment. The homicide under consideration was not occasioned by disobedience of the law relating to the carrying of concealed weapons. The ninth request was also properly refused. The right of the defendant to the possession of the loaded revolver was not an issue in the case. The twenty-first request was properly refused. While it is true that Gen. Laws, cap. 285, § 24, as amended by C. P. A. § 1185, provides as follows: "SEC. 24. Whenever any person is tried upon a complaint or indictment and the court or jury, as the case may be, shall not be satisfied that he is guilty of the whole offence but shall be satisfied that he is guilty of so much thereof as shall substantially amount to an offence of a lower nature, or that the defendant did not complete the offence charged but that he was guilty only of an attempt to commit

the same, the court or jury may find him guilty of such lower offence or guilty of an attempt to commit the same, as the case may be, and the court shall proceed to sentence such convict for the offence of which he shall be so found guilty, notwithstanding that such court had not otherwise jurisdiction of such offence," and while in certain homicides there may be a gradation of offences, as set forth in 1 Bish. New Crim. Law, 8th ed. § 780, 3: "In Felonious Homicide,—*committed by an assault and a beating*, there may be a gradation of offences, the particulars of which will somewhat vary with the laws of the State in which it is committed. The lowest offence will be assault, the next above it will be battery, the next will sometimes be assault with a dangerous weapon, the next assault with a dangerous weapon with intent to kill, the next manslaughter, the next murder, and the last murder in the first degree. Each one of these, except the last, will be a less crime included in the greater. And where the common-law rule that there can be no conviction for misdemeanor on an indictment for felony does not prevail, a person on trial for any higher one of these offences may be convicted of any lower one which the proofs establish, if the indictment is, as it always may be made, in a form to include the lower,"—it does not follow that there must be such a gradation of offences in every felonious homicide.

It is perfectly apparent that in a case like the one at bar, where the killing was instantaneous, the result of a shot from a 38 caliber revolver, where the charge is merely manslaughter, the defendant is either guilty or not guilty of that charge. The punishment for manslaughter is imprisonment not exceeding twenty years. Gen. Laws, cap. 277, § 3. The punishment for assault or battery or both, with a dangerous weapon, is imprisonment not exceeding two years. Gen. Laws, cap. 277, § 19. The punishment for assault or battery, or both, is imprisonment not exceeding one year or a fine not exceeding five hundred dollars, or both. Gen. Laws, cap. 277, § 20, as amended by C. P. A. § 1171. It is noticeable that no minimum penalty is fixed for any of the above named offences. After verdict of guilty on an indictment for manslaughter the judge who pronounces sentence upon the defend-

ant may, in any deserving case, make the punishment as light as if the charge had been simple assault. The twenty-second request is a pure and simple statement of fact, entirely improper for the court to charge as matter of law.

The twenty-fourth exception is to the decision of the court denying the defendant's motion for a new trial on the ground that the verdict is against the law and the evidence. The verdict was not against the law; the jury evidently followed the instructions given to them by the court, which we have stated were correctly given. Neither is the verdict against the evidence. There is no question but that the defendant shot and killed his wife; whether it was done accidentally, while he was trying to protect himself from bodily harm, was a question properly left to the jury, who decided that it was not.

The defendant's exceptions are overruled, and the case is remitted to the Superior Court, within and for the county of Kent, for sentence.

*Henry W. Greenough, Assistant Attorney General,* for State.
*William M. P. Bowen,* for defendant.