STATE

v.

**Destie VENTRE.**

**No. 2000–497–C.A.**

Supreme Court of Rhode Island.

Dec. 23, 2002.

---

Aaron L. Weisman, Providence, for Plaintiff.

David N. Cicilline, Bristol, for Defendant.

Before WILLIAMS, C.J., and LEDERBERG, FLANDERS, and GOLDBERG, JJ., and WEISBERGER, C.J. (Ret.).

## OPINION

WEISBERGER, Chief Justice (Ret.).

This case comes before us on an appeal by Destie Ventre (Ventre or defendant), who was convicted of the crimes of murder in the second degree, and assault with a dangerous weapon, following a jury trial in the Superior Court. Ventre was acquitted of the charge of assault with intent to commit murder. In September of 2000, the trial justice sentenced Ventre to forty years imprisonment for the murder, and ten years imprisonment for assault with a dangerous weapon, the sentences to be served consecutively at the Adult Correctional Institutions.

### Pertinent facts

The facts of the case as presented by the state in its brief and the facts as presented by defendant in his brief vary widely. Since defendant's claim in opposition to the state's charges was self-defense, we shall recite the facts from the defense point of view in order to determine whether the legal issues raised by defendant in support of his appeal are meritorious. According to defendant's testimony, on June 6, 1998, Ventre admittedly shot and killed Richard Cruso (Cruso), who was a longtime friend of defendant. This friendship was marred about a year before the tragic incident when Ventre assisted Cruso in his purchase of a dirt bike from Anthony DeLomba (DeLomba). DeLomba and Ventre also were friends. After the purchase, the dirt bike was not operating in a manner satisfactory to Cruso, who insisted that Ventre return the dirt bike and persuade DeLomba to repair it. Ventre apparently returned the bike, but DeLomba did not repair it. Cruso became impatient and continually importuned Ventre to increase his efforts to persuade DeLomba to complete the repairs.

This disagreement accelerated and intensified. On June 5, 1998, Cruso went to Ventre's house and was informed that Ventre was not at home. Later that evening, Cruso went with his friends David Bettencourt (Bettencourt), Lance Verrochio (Verrochio) and Vincent Leonardo (Leonardo) to the Acorn Social Club in Providence. They later moved to another bar called Bootleggars. At Bootleggars, defendant was accompanied by his brother, Ryan Guinto, and a friend named Gregg Warren (Warren). Cruso was also at Bootleggars, but defendant and he did not speak when they first arrived. Several hours later, defendant and his brother encountered Cruso and began a conversation. While they talked, a fight began between Leonardo and Warren. The defendant tried to break up the fight, but was knocked to the ground. At that point, the police came on the scene and apparently took Leonardo into custody. The defendant and his brother departed in their automobile.

After midnight, Cruso called defendant on a cell phone. They agreed to meet at the Acorn Social Club. This establishment was sometimes referred to in testimony as "Bobo's". The defendant was driven by his brother to this location, and upon arrival they slowly circled the parking lot. Something struck their automobile, and the brother stopped the car to find out what had happened. When defendant left the car, according to his testimony, he was attacked by Leonardo, Bettencourt, Verrochio and Cruso. Ventre backed toward his automobile as he was struck and pummeled by his assailants. His ability to run was impaired from a prior accident that resulted in a rod being placed in one of his legs.

The defendant had placed a pistol in his automobile when he moved from his mother's house. It was in a plastic container just below the dashboard. He testified that he had obtained this gun several years before, as a result of having been kidnapped and held for ransom.

As he left his vehicle, according to defendant, the beating and pummeling continued. He was afraid that he might be killed. He reached through the door of the car which had been left open. He took hold of the gun, which had fallen to the floor, and fired three shots for the purpose of frightening his assailants in order to get them to leave him alone. One shot hit Leonardo. The third shot struck Cruso in the chest. The defendant and his brother left the scene. The defendant testified that he was not aware that Cruso was dead.

Actually, defendant was not arrested until July 30, 1998, when he was found by detectives at the home of a girlfriend on Pomona Avenue in Providence. Both defendant and his brother were staying in a makeshift bedroom in the basement of the house. Ventre was found hiding in a crawlspace under a stairway in the basement.

The state's witnesses testified to a completely different version of the altercation at Bobo's. These witnesses testified that the shots were fired virtually without any provocation. However, since defendant interposed the alleged justification of self-defense, for purposes of this opinion, his version of the events must be controlling in determining the correctness of certain instructions given by the trial justice and certain evidentiary rulings that were made.

In support of his appeal, defendant raises four issues. These issues will be considered in the order of their significance to this opinion. Further facts will be supplied as may be necessary in order to deal with these issues.

## I.

### The prior acts of Vincent Leonardo

 The defendant argues that although some testimony was admitted of specific incidents of violent conduct on the part of Leonardo, the trial justice erred in declining to admit as evidence to show propensity for violence that Leonardo had, twelve years earlier, at the age of fourteen, been found delinquent in the Family Court for having committed the act of second-degree murder. At an earlier point in the trial during the prosecution's case, counsel for the state had elicited evidence concerning the murder, but at that juncture, the trial justice instructed the jury that this evidence could be considered only on the issue of credibility. In responding to defense counsel, he had commented that no evidence of self-defense had been presented. This was not remarkable since defendant's testimony was not presented until a later time in the trial.

When defendant did testify and gave evidence of his being attacked by four assailants, including Leonardo, the trial justice declined to admit evidence of this conviction for the purpose of showing Leonardo's propensity for violence. The defense also sought to show that defendant was aware of this conviction. The trial justice stated that the murder was too remote. In this respect, we are of the opinion that the trial justice committed prejudicial error.

 Our cases have held that when self-defense is asserted, a defendant has a right to present not only reputation evidence but specific instances that tend to prove a victim's propensity for violence. This is particularly true when these instances of violence are known to defendant and would be relevant to determining his state of mind and whether he would be in fear of death or serious bodily harm.

*State v. Fetzik,* 577 A.2d 990, 995 (R.I. 1990); *State v. Infantolino,* 116 R.I. 303, 313, 355 A.2d 722, 728 (1976).

In order to determine the quantum of force, which would be reasonable in repelling his attackers, Ventre's state of mind and the reasonableness of his fear were matters of key importance. Knowing that one of his assailants not only was frequently involved in violent altercations, but had also committed the act of murder, would unquestionably contribute to the reasonableness of defendant's fear. Although the murder had taken place twelve years before, defendant tried to testify that Leonardo had bragged about it in his presence on far more recent occasions. The trial justice steadfastly either sustained objections to such questions or struck the answers from the record, and instructed the jury to disregard any such statements. Thus, as far as the record was concerned, the only consideration which the jury could give Leonardo's past act of murder was in considering his credibility as a witness for the prosecution. Leonardo, of course, was the victim of the offense of assault with a dangerous weapon of which defendant was found guilty.

Certainly, defendant was entitled in support of his claim of self-defense to set forth his knowledge of the propensity of one of his principal assailants for extreme violence and homicidal behavior. *See State v. Soto,* 477 A.2d 945, 949 (R.I.1984); *State v. Tribble,* 428 A.2d 1079, 1083 (R.I.1981). In the course of evidentiary colloquies, the trial justice expressed an opinion that Ventre was not fearful of Leonardo, since they had been friends for many years and had "hung out" together on numerous occasions. While this observation might diminish the credibility of defendant's fear, it would not make evidence of Leonardo's propensity for violence inadmissible. We might also add that Leonardo could well

have been friendly to Ventre on other occasions, but when Leonardo was aroused to violence, Ventre could have been justifiably fearful of the threat which was posed in light of Leonardo's past conduct. This evidentiary ruling was in our opinion reversible error both in respect to the charge of murder and the charge of assault with a dangerous weapon.

## II.

### The instruction concerning self defense

■■■ The defendant argues that the instruction of the trial justice on self-defense was legally inadequate, particularly as it related to the use of deadly force. The trial justice did give an instruction in respect to self-defense in the following form.

"Now, in this case, the defendant has raised self-defense. The law of self-defense holds that a person may defend himself whenever he reasonably believes that he is in imminent danger of bodily harm at the hands of another. A person harboring such fear need not wait for the other person to strike first, however, such a person must use only force reasonably necessary for his own protection. A person in a household when he is confronted by what he feels is harm to himself. He must first retreat before he uses deadly force. He may not use any force that exceeds the force that he perceives to be upon him. He can not [*sic*] be excused for the crime if his force is greater than the force that was used upon him."

There is no question that this instruction fell far short of expressing the total picture of the law in respect to self-defense, when defendant has claimed that he used deadly force because he believed that he was in danger of death or serious bodily injury. In this portion of the instructions, the trial justice speaks of the right of a person in a household to use deadly force. The household reference was not relevant to the altercation in the case at bar. It might well have been confusing to the jury. The statement that defendant "may not use any force that exceeds the force that he perceives to be upon him" would also be misleading since defendant here had used a firearm in response to being struck by fists and feet. We have said in *State v. Marquis*, 588 A.2d 1053, 1055 (R.I.1991), that the permissible degree of force used in self-defense depends on that which is necessary under all the circumstances to prevent any injury to the person seeking to defend himself. *Id.* at 1055. We also emphasized in that case that the necessary force must be determined in light of all the surrounding circumstances. In measuring the adequacy of the instruction, we cannot take into account whether the trial justice believed defendant's version of the event. That would be for the jury to decide under an appropriate instruction.

After the trial justice's original instruction on self-defense, he asked counsel to comment concerning any shortcomings in his instruction. At that point, defense counsel raised the issue of the burden of proof to which the trial justice responded. Counsel also asked that the jury be instructed to consider any physical disability that defendant had when the jury considered the issue of self-defense. The trial justice did not give this instruction. This also was erroneous since there was evidence in the case that defendant had a disability which might well have interfered with his ability to escape. *Fetzik*, 577 A.2d at 995.

The state argues that defense counsel did not raise his objection as specifically to this instruction as should have been done. It is true that defense counsel did not discuss the degree of force that should

have been used. However, we are of the opinion that the objection was sufficient in respect to the issue of deadly force to cause the trial justice to review more thoroughly the adequacy of the total instruction. It should also be noted that counsel for defendant presented the trial justice, before his charge to the jury, six requests for instruction. Request number four did include a reference to the use of deadly force and also included reference to the importance of defendant's perception of the situation at the time of the incident in question, along with appropriate citations to *Fetzik* and *Tribble*. Counsel did point out that the jury should be instructed to consider specific acts of violence by the victim Leonardo and that "the very essence of the defense of self-defense is how defendant perceived the situation at the time of the incident." The trial justice ignored this request.

The state argues that we should take into account the totality of the instruction. We agree with this admonition, and viewing the instruction as a whole, we find it to be gravely inadequate. This constitutes reversible error.

The defendant also argues that the trial justice failed to relate the claim of self-defense to the charge of assault with a dangerous weapon. It is true that the trial justice did not focus attention upon the issue of self-defense as it might relate to the charge of assault with a dangerous weapon. After the jury began its deliberation, it asked the trial justice to clarify the charge of assault with a dangerous weapon. The trial justice defined the charge, but when he was asked by defense counsel to comment upon the defense of justification of self-defense, he declined to do so because the jury had not asked for this instruction. In light of the failure to relate the original instruction on self-defense to the charge of assault with a dangerous

weapon, we are of the opinion that this was an excellent opportunity to reinforce the relevance of such a defense to this charge. In light of the original inadequacy of the instruction on self-defense, the failure to reinforce the instruction, when the opportunity was given by the jury's questions, was also prejudicial error.

## III.

### Instruction on Manslaughter

 The defendant also argues that the trial justice should have instructed the jury on the issue of voluntary manslaughter. In light of defendant's claim of having been set upon by four assailants, an instruction on manslaughter would have been appropriate. Voluntary manslaughter is an intentional homicide that does not include the element of malice aforethought by reason of one or more mitigating factors. *See State v. Lillibridge*, 454 A.2d 237, 240 (R.I.1982). Such mitigating factors would include the heat of passion that arises as a result of adequate provocation. *Id.* at 240. In *Fetzik*, we stated that "[h]eat of passion may be aroused by 'fear and terror as well as anger.'" *Fetzik*, 577 A.2d at 995 (quoting *State v. Williams*, 432 A.2d 667, 669 (R.I.1981)).

The defendant's testimony provided an adequate basis for a claim that defendant was faced with a brutal attack, which placed him in fear of death or serious bodily harm. Even if this did not rise to the level of total justification, it would certainly establish a basis for a jury to consider whether the response of use of deadly force was sufficiently provoked to negate the element of malice aforethought. The trial justice erred in failing to place the issue of the lesser included offense of voluntary manslaughter before the jury.

## IV.

### Intoxication of Cruso

 The defendant also raises the issue of the trial justice's refusal to admit evidence of Cruso's intoxication on the night of the fatal incident (including the refusal to allow a toxicologist to testify). While we are of the opinion that this exclusion did not rise to the level of reversible error, we believe that this evidence should have been admitted since it may have been relevant even without the support of further expert testimony to establish the probability that the victim Cruso may well have been disinhibited by intoxication and more likely to have engaged in aggressive conduct toward defendant. Since our finding of prejudicial error in respect to other issues will require a new trial, we would suggest that in the event of a subsequent trial, consideration should be given to holding a hearing in accordance with *Handy v. Geary*, 105 R.I. 419, 252 A.2d 435 (1969), to determine whether the level of intoxication as found by the toxicologist would have been likely to affect Cruso's conduct on the night of this tragic occurrence.

## V.

### Conclusion

For the reasons stated, the appeal of defendant, both as to the convictions for murder in the second degree and assault with a dangerous weapon, is sustained. The judgments of conviction are vacated. The case may be remanded to the Superior Court for a new trial.