STATE

v.

Damien McGUY.

No. 2000–264–C.A.

Supreme Court of Rhode Island.

Nov. 25, 2003.

Virginia McGinn, Providence, for Plaintiff.

Kelly Monteiro, Providence, for Defendant.

Present: WILLIAMS, C.J.,
FLANDERS, GOLDBERG, FLAHERTY,
and SUTTELL, JJ.

# OPINION

FLANDERS, Justice.

Convicted of second-degree murder, the defendant, Damien McGuy (defendant), assails the trial justice on appeal for failing to instruct the jury on the lesser-included offense of voluntary manslaughter. He also maintains that the trial justice should have dismissed at least one of the charges against him because the state violated his constitutional right not to be placed in double jeopardy for the same offense. The state charged him both with murder and with committing a crime of violence while he was armed. According to the defendant, because the state had to introduce the same evidence to convict him of both crimes, the trial justice should have dismissed the latter charge to avoid violating the constitutional bar against placing defendants in double jeopardy.

For the reasons expressed in this opinion, we reject these arguments. Given the evidence in this case, a rational jury could not conclude that defendant shot the victim in the heat of a sudden passion, without malice aforethought, and in response to adequate provocation. Thus, we hold, the trial justice properly declined defendant's invitation to instruct the jury on the crime of voluntary manslaughter. We also reject defendant's double-jeopardy argument, concluding, as we do, that each charge of murder and of committing a crime of violence while armed required proof of a fact that the other crime did not, thereby avoiding any double-jeopardy problem.

## Travel and Facts

In the early morning hours of December 11, 1998, defendant shot and killed the victim—one, Sherwin "Nesto" Grant (Grant)—while Grant was leaning into the open front window of the car in which defendant was seated on the front passenger side. The defendant and Grant had been verbally sparring with each other for more than five minutes before the shooting occurred. According to defendant's trial testimony, Grant repeatedly touched defendant's face with one hand while he was leaning through the car's passenger-side window and holding a gun with the other. No other witness, however, saw Grant holding a gun, and the police found no gun at the crime scene. According to defendant's testimony, however, Grant was holding a gun in one of his hands during the entire five-plus-minute period that Grant was verbally jousting with and harassing him—albeit Grant never pointed the gun at defendant or threatened to shoot him with it. Nevertheless, fearing that he might be shot when Grant appeared to be taking the gun out of his coat pocket, defendant decided to shoot and kill Grant preemptively, which he then proceeded to do by suddenly drawing out his own gun and discharging a hail of bullets at Grant. One of the fatal bullets entered his neck and a later-fired shot struck him in the back.

After hearing this evidence at trial, the jury spurned defendant's self-defense argument and returned guilty verdicts on the charges of second-degree murder, carrying a firearm without a license, carrying a dangerous weapon when committing a crime of violence, and discharging a firearm from a moving vehicle. The court then entered the appropriate judgments of conviction, denied defendant's motion for a new trial, and sentenced him to serve a fifty-year sentence for the murder conviction and a concurrent ten-year sentence for the unlicensed-firearm and crime-of-violence-while-armed convictions. The

justice also sentenced defendant to a consecutive twenty-year sentence, suspended with probation, for the charge of discharging a firearm from a motor vehicle.

## I
## The Trial Justice's Failure to Give a Voluntary–Manslaughter Instruction

■ The defendant first argues that the trial justice committed reversible error by denying his request to instruct the jury on the lesser-included offense of voluntary manslaughter. He suggests that some evidence existed from which a rational jury could conclude that he shot the victim in the heat of a sudden passion and that he did so without any malice aforethought while responding to adequate provocation: to wit, a victim who was brandishing a gun in his presence with one hand while verbally harassing him and physically touching him on his face with the other hand.

■ To ensure a fair trial, a trial justice should instruct the jury in the law that must be applied to the issues that the parties have raised through the evidence admitted during the trial. G.L.1956 § 8–2–38. A trial justice commits prejudicial error when he or she refuses to give a jury instruction that the evidence entitles the defendant to receive. *See State v. Butler*, 107 R.I. 489, 491, 496–97, 268 A.2d 433, 434, 437 (1970). A defendant facing criminal charges is entitled to an instruction on a lesser-included offense when the evidence presented at trial warrants such a charge. *State v. Rodriguez*, 822 A.2d 894, 909 (R.I.2003). In other words, the court should give such a charge when a party

has introduced minimal evidence that would "sustain a conviction on a lesser included offense * * *." *See State v. Figueras*, 644 A.2d 291, 295 (R.I.1994). *See also Rodriguez*, 822 A.2d at 911. The trial justice, however, should not instruct the jury on a lesser-included offense when the evidence wholly fails to support such a charge. *Figueras*, 644 A.2d at 294.[1] In determining whether the evidence calls for a lesser-included-offense instruction, the trial justice should not weigh the credibility of the testimony; rather, he or she should consider whether, at the very least, some minimal evidence exists that, if credited by the jury, could support a conviction for the lesser-included offense. *See Rodriguez*, 822 A.2d at 910.

[7–9] Voluntary manslaughter is a lesser-included offense to a charge of murder. *State v. Dordain*, 566 A.2d 942, 946 (R.I.1989) (citing *State v. Casasanta*, 29 R.I. 587, 598, 73 A. 312, 317 (1909)). Rhode Island adheres to the common-law elements of voluntary manslaughter, *State v. Vargas*, 420 A.2d 809, 815 (R.I.1980), defining it as an (1) intentional homicide, (2) committed without malice aforethought, (3) in the heat of a sudden passion, (4) as a result of adequate provocation. *State v. Lillibridge*, 454 A.2d 237, 240 (R.I.1982). A defendant charged with murder is entitled to a voluntary-manslaughter instruction when the defendant produces some evidence from which a rational jury could conclude that he or she killed the victim without malice aforethought, in the heat of a sudden passion, and in response to a legally adequate provocation. *See State v. Conway*, 463 A.2d 1319, 1322 (R.I.1983).

---

1. The trial justice should give the jury a lesser-included offense instruction when the evidence so warrants because "of the danger that, absent such an instruction, a jury may erroneously convict a criminal defendant of the principal offense charged, despite the prosecution's inability to prove an element of that offense, when the jury is convinced that the defendant's conduct was criminal." *State v. Rodriguez*, 822 A.2d at 894, 910 (R.I.2003) (quoting *State v. Brown*, 549 A.2d 1373, 1378 (R.I.1988)).

Thus, this Court has stated that voluntary manslaughter exists when "(1) the provocation * * * [is] so gross as to cause the ordinary reasonable man to lose his [or her] self control and to use violence with fatal results, and (2) the defendant * * * [is] deprived of his self control under the stress of such provocation and * * * committed the crime while so deprived." *State v. Winston*, 105 R.I. 447, 453, 252 A.2d 354, 357 (1969) (quoting *State v. King*, 37 N.J. 285, 181 A.2d 158, 166 (1962)).

Here, we agree with the trial justice that defendant introduced insufficient evidence to show that Grant's conduct on the date in question, however provocative, was "so gross" as to cause an ordinary reasonable person to lose his self-control and to use deadly force with fatal results. Nor did the evidence show that defendant became so distressed and terrified that, in the heat of a sudden passion, he lost his self-control and engaged in murderous conduct with predictably fatal results.

 Courts should apply an objective standard to determine whether an alleged provocation is legally sufficient. *See, e.g., State v. Clark*, 261 Kan. 460, 931 P.2d 664, 672 (1997). Mere words or gestures, unaccompanied by an act threatening imminent death or serious bodily harm, do not constitute a provocation sufficient to reduce a homicide from murder to manslaughter. *See, e.g., Commonwealth v. Niemic*, 427 Mass. 718, 696 N.E.2d 117, 121 n. 3 (1998); *see State v. Johnson*, 324 S.C. 38, 476 S.E.2d 681, 682 (1996). Rather, adequate provocation requires the defendant to reasonably fear imminent death or serious bodily harm. *See State v. Ventre*, 811 A.2d 1178, 1184 (R.I.2002) ("The defendant's testimony provided an adequate basis for a claim that *defendant was faced with a brutal attack*, which placed him in fear of death or serious bodily harm."). (Emphasis added.)

In this case—even though defendant said that he feared what might happen to him as a result of his unfriendly and verbally abusive encounter with Grant—the evidence failed to show that defendant reasonably feared imminent death or grave bodily injury based on Grant's conduct. Although courts have held that adequate provocation exists when the victim attacks the defendant while wielding a weapon capable of inflicting death or serious bodily harm, *see, e.g., State v. Fetzik*, 577 A.2d 990, 995 (R.I.1990), here, the victim—although he allegedly was holding a gun—did not attack the defendant, point the gun at him, or threaten to use it against him. In *Fetzik*, 577 A.2d at 995, this Court held that the trial court erred in failing to charge the jury on the lesser-included offense of voluntary manslaughter. The *Fetzik* defendant presented evidence that the victim entered the defendant's apartment uninvited and ignored repeated warnings to leave, before drawing a knife and attempting to lunge at defendant. *Id.* at 995. This Court reasoned that "[the] defendant's decision to fire his weapon was the result of fear generated by the victim's actions. Therefore, an instruction on voluntary manslaughter [was] entirely appropriate." *Id.* at 995. Importantly, the defendants in *Fetzik* and *Ventre* reasonably perceived that they were under attack and that their victims were in the process of using deadly force against them in a potentially lethal manner. *See Ventre*, 811 A.2d at 1184; *Fetzik*, 577 A.2d at 995–96.

 The defendant also argues that Grant's conduct during the two days before the shooting constituted adequate provocation. He testified that Grant touched his neck chain at a gas-station convenience store, that the two of them then verbally exchanged sundry unpleasantries, and that defendant physically attacked Grant. Later that morning, de-

fendant saw the victim again at a local restaurant. A verbal altercation ensued and defendant testified that he heard gunshots coming from Grant's vicinity shortly after defendant left the scene. These acts, however, were insufficient to support a voluntary-manslaughter instruction because defendant possessed adequate time to cool off before he shot and killed Grant two days later. *See State v. Infantolino*, 116 R.I. 303, 307–08, 355 A.2d 722, 725 (1976) (affirming trial justice's refusal to instruct jury on voluntary manslaughter because five to fifteen minutes elapsed between alleged passion-producing event and the killing). Even on the night of the murder, Grant had been verbally contending with defendant for well over five minutes—all the while, according to defendant, holding the gun in his hand. At no time did Grant point the gun at defendant or threaten to use it on him. Thus, even though Grant's gun-toting conduct and his other verbally and physically abusive acts may have given defendant cause to fear for his safety, absent a direct attempt or imminent threat to shoot defendant with the gun, Grant's behavior still was not sufficiently threatening to allow defendant to preemptively pull out his gun and shoot Grant to death. People who fear those bearing arms are not adequately provoked to shoot and kill them merely because the latter become verbally abusive and draw too close for comfort.

 The defendant also failed to produce minimally sufficient evidence demonstrating that the killing occurred during the heat of some sudden and uncontrollable passion. Heat of passion exists when the defendant suddenly and temporarily loses his self-control as a result of experiencing some overpowering emotion—such as extreme fear, terror, or anger—caused by a legally adequate provocation, such as

being attacked by someone wielding a deadly weapon. *See Ventre*, 811 A.2d at 1184; *Fetzik*, 577 A.2d at 995. In this case, however, the evidence did not suggest that Grant was attacking defendant or attempting to shoot him when defendant launched his preemptive strike; much less did it indicate that defendant's fear that Grant might shoot him was so extreme and overpowering that he lost his self-control. *Cf. Ventre*, 811 A.2d at 1184 (finding defendant's heat-of-passion argument colorable because four assailants allegedly attacked and pummeled the defendant before he used the gun).

Here, the evidence simply did not show that Grant's conduct had caused defendant to lose his self-control and to "seeth[e] with uncontrollable rage, anger, and resentment." *Infantolino*, 116 R.I. at 307, 355 A.2d at 725. Although defendant testified that he killed Grant because he "was scared" Grant was going to shoot him, he admitted that the gun was "never pointed directly at me." *See People v. Webb*, 143 Cal.App.2d 402, 300 P.2d 130, 139 (1956) (stating that " 'fear alone and by itself is not sufficient to reduce murder to manslaughter' "); *Carrillo v. State*, 889 S.W.2d 501, 503 (Tex.Ct.App.1994) (noting that a "bare claim" of fear is insufficient to warrant a voluntary-manslaughter charge). *See also Infantolino*, 116 R.I. at 308, 355 A.2d at 725 (rejecting defendant's heat-of-passion contention, in part, because defendant admitted he was not "mad" and witnesses testified that he did not appear to be upset).

Moreover, defendant's testimony that he "was afraid to die" and that he could not remember the number of shots he fired was insufficient to show that defendant's fear of being shot to death was so great and so overwhelming that he lost his self-control and killed Grant in the heat of a sudden passion and without any malice

aforethought. On the contrary, the evidence suggested that whatever fear defendant experienced during his five-plus minute verbal altercation with Grant holding the gun in his hand was not so sudden and overpowering an emotion that he could not rationalize and execute a plan to whip out his gun and shoot Grant first, thereby foreclosing any possibility that Grant might decide to use a weapon on defendant. Moreover, one of the later-fired bullets from defendant's gun hit Grant in the back, suggesting that even after he turned away from defendant, the latter kept on shooting at him.

Finally, the second-degree murder conviction was consistent with the evidence that indicated that defendant had premeditated the shooting, however momentarily. The defendant had purchased the gun just two days earlier after an altercation with Grant, thereby indicating that he may have premeditated the possibility of using it as he did if he were to experience a similar confrontation with Grant. And he had at least five minutes on the night of the shooting to decide whether to pull his gun out and shoot Grant with it, or, alternatively—as happened two days before the fatal shooting—to let Grant's conduct pass without introducing any responsive gunplay, allowing both of them a chance to go their separate ways without either one shooting the other at point-blank range.

## II

### This Court's Recent *Rodriguez* Decision Forecloses the Defendant's Double–Jeopardy Argument

 One week after the court convicted defendant of all charges, he moved, on double-jeopardy grounds, to dismiss the charge that he carried a dangerous weapon while committing a crime of violence. Rule 12(b)(2) of the Superior Court Rules of Criminal Procedure explicitly provides,

however, that the defense of double jeopardy can be raised only by a motion filed before trial and that a defendant's failure to so move constitutes a waiver of his or her right to do so (though the court, for cause shown, may grant relief from the waiver). *See also State v. Pearson*, 49 R.I. 386, 391, 143 A. 413, 415 (1928) ("This defense, if not waived by defendant, should have been made by a special plea * * * and tried before the general plea of not guilty."). Although the prosecutor did not object to the timing of defense counsel's motion and the trial justice considered the motion on its merits, the strong policy favoring the pretrial presentation of a double-jeopardy motion bars its use at such a late post-trial date absent some compelling reason to grant relief from the waiver sanction of Rule 12(b)(2). *See Pearson*, 49 R.I. at 391, 143 A. at 415 ("The propriety of requiring such a defense to be pleaded at an early stage in the proceedings is obvious, as a decision favorable to the defendant would make a trial on the merits unnecessary."). Here, no such reason existed for the trial justice to relieve defendant of having waived any double-jeopardy argument by his failure to move on this basis in a timely manner before trial.

Moreover, even were we to set aside this procedural problem, defendant's substantive argument on this issue is wholly without merit. In *Rodriguez*, 822 A.2d at 906, this Court held that the crimes of first-degree murder and of using a firearm when committing a crime of violence do not merge for double-jeopardy purposes because each charge requires proof of an additional element that the other does not: namely, murder and using a firearm, respectively.

 Applying *Rodriguez* to the convictions for second-degree murder and for carrying a dangerous weapon when com-

mitting a crime of violence, we hold that both were separate crimes because each required proof of a fact that the other did not; to wit: murder and carrying a dangerous weapon, respectively.

### Conclusion

For these reasons, we affirm the convictions.